(19 App. Div. 223.)

. BAKER et al. v. TURNER.

(Supreme Court, Appellate Division, First Department.    June 25, 1897)..

CONSIGNMENT OF GOODS—AGREEMENT FOR SALE—CREDITOR AND DEBTOR.

It was agreed that between certain dates a firm would consign as many flags as the consignee should order, and that on a later date the consignee should render an account, and pay to the consignor, "from the amount received for said flags," the amount at which they were billed to the consignee. The consignee's right to sell was unlimited, and it could return flags left unsold, or retain them at the consigned price. Held, that since the consignee had the right to sell at less than the consigned price, or take the flags itself, the relation between consignor and consignee was merely that of creditor and debtor.

Special proceeding by Howard M. Baker and others against George W. Turner, receiver, etc., of the New York Recorder Company, to compel him to pay certain alleged trust funds to plaintiffs. From an order directing such payment defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

W. H. Stayton, for appellant.

Duncan Edwards, for respondents.

VAN BRUNT, P. J. In the month of April, 1896, the New York Recorder Company was a corporation doing business in the city of New York, and said company entered into an agreement with the firm of Baker, Carver & Morrell, by which said firm were to deliver to said company or upon its order, upon consignment, as many American flags as said company should order between the 15th day of April and the 2d day of July, 1896, and that on or before the 14th day of July, 1896, the said company should render its accounts to said firm, and pay over to it, from the amount received for said

flags sold by said company, the amount specified in the bills of said
firm upon the delivery of said flags to said company, and should
return any flags then remaining on hand, or said company could re-
tain such remaining flags by paying for them at the consigned price.
No credit was given to the company for the consigned price of the
flags. The firm had the privilege of withdrawing any of said flags
at any time they desired to do so prior to the sale thereof by the
company. Between the 15th of April and the 2d of July, 1896,
there were delivered to said company, or upon its order, by said
firm, in accordance with this agreement, flags of the agreed value
of $1,759.70, which said flags so delivered were sold by said com-
pany, and the money in payment for the same was received by said
company, but said company did not keep said money apart from its
other funds, the said moneys being received at various times through-
out said period, and mingled with the other funds of the company.
On the 3d of July, 1896, the appellant was appointed receiver in an
action brought in this court for the dissolution of the corporation,
upon the ground of insolvency; and there were delivered to him by
the company upon that day moneys in excess of the amount of the
plaintiff's claim, and in excess of the amount of the claim of the
Rochester Fireworks Company, which company also claimed that
the appellant should be required to pay certain alleged trust moneys
to it. No part of said $1,759.70 has been paid. Upon this state of
facts, the court made an order directing the receiver to pay out of
the moneys, assets, and property received by him, as receiver of the
company, the said sum of $1,759.70, with interest from July 14,
1896; and, from the order thereupon entered, this appeal is taken.

There is one point claimed by the counsel for the respondent which
does not appear to have been established in this proceeding, and
that is that the recorder company received the sum of $1,759.70 upon
the sale of the flags disposed of by it. Upon the contrary, the ref-
eree who was appointed to take proof of the facts reported simply
that flags to that amount were consigned to the company, and that
they were sold by it, but at what price he does not say, and that the
moneys received therefor were mingled with the general moneys of
the concern. The whole of the argument of the respondent is based
upon this assumption. The counsel states that this $1,759.70 was a
definite and fixed sum in the possession of the recorder company,
belonging to the claimant. As we have already stated, there were
no facts found to justify this claim. What was received by the re-
corder company for these flags does not appear; and hence there
is no foundation for the claim that there was any specified or fixed
sum in the hands of the recorder company at the time the appellant
was appointed receiver, and took possession of the assets. It is
clear, upon a reading of the agreement in question, that the re-
corder company in no way violated its obligation to the claimants
if it sold the flags at a price below that at which they were con-
signed, because it had a right to take the flags itself, if it so de-
sired. It became liable to pay the consigned price whether it sold
the flags or bought them itself; and that was the sole obligation
which the company incurred under the agreement entered into be-

tween it and the claimants. It was the ordinary relation of debtor and creditor. It is true that it is stated in the agreement that the company was to pay out of the moneys received for the flags; but that could not apply to the whole contract, because, if the company chose to take the flags upon its own account, there would be no money received from which payment could be made; and, under those circumstances, the contract expressly provided that the company should be liable for the price at which the flags were consigned. No limitation was placed upon the right of the company to sell the flags at any price it might see fit; and, if it sold below the consigned price, it is clear that it became a debtor for the consigned price, and nothing else. Upon the whole case, therefore, it seems to us that there was a total failure to show any trust funds in the hands of the receiver upon which these claimants had a lien superior to the other creditors of the company.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.