**O & L ASSOCIATES, Plaintiffs,**

v.

**Andrea DEL CONTE, Rebecca Sullivan, and Hope Rayman, Defendants.**

**No. 83 Civ. 7939 (EW).**

United States District Court,
S.D. New York.

Feb. 1, 1985.

Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for plaintiffs; Charles B. Ortner, Victoria A. Cundiff, New York City, of counsel.

Murphy & O'Connell, New York City, for defendants; Patrick Murphy, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Columbia Pictures Industries, Inc.; Robert G. Sugarman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

On March 22, 1984, Columbia Pictures Industries, Inc. ("Columbia"), not a party

to this action, entered into an agreement with the defendants with respect to the motion picture "The Karate Kid." By that agreement, Columbia allegedly acquired the universal right, in perpetuity, to use and permit others to use the name "The Flirts" in connection with the motion picture and the soundtrack album derived from it. Thereafter, Columbia allegedly released the motion picture with a soundtrack that includes a song performed by defendants and with an end credit that attributes their performance to "The Flirts." A similar credit allegedly appears on the soundtrack album and audio cassette, which are distributed by Polygram Records, Inc. under license from Columbia. The motion picture is currently being exhibited in sixty six theaters in the United States and Canada and an additional 900 theaters worldwide.

On December 3, 1984, this Court issued a Preliminary Injunction Order (the "Order"), which provides in pertinent part that

> pending final determination of this action, defendants and each of them, and their officers, agents, servants, employees, attorneys, and all others in concert or participation with any of them, on behalf of any of them, in privity with any of them, *or acting under authority or license granted by any of them* who receive actual notice of this order by personal service or otherwise, be and hereby are preliminarily enjoined from … using the name "The Flirts" … in connection with any entertainment services or entertainment products.[1]

Columbia now moves to suspend and modify the Order so as to exclude from its scope the distribution and exploitation of the motion picture "The Karate Kid" and the soundtrack album in any medium using any device, including, but not limited to, theatrical exhibition, video disc, video cassette,

phonograph record, audio cassette, and compact disc.

■■■ As already noted, Columbia is not a party to the action, nor has it been served as such. At oral argument, the Court questioned whether Columbia was proceeding properly in bringing the instant motion, but counsel for Columbia responded that the terms of the Order bind Columbia as one "acting under authority or license granted by any of [the defendants]." It is well established, however, that the terms of an injunction may not enlarge its scope beyond that defined in the Federal Rules of Civil Procedure.[2] Rule 65(d) provides that

> [e]very order granting an injunction … is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Consequently, the Order does not bind Columbia unless and until Columbia is shown to have acted with actual notice of the Order and in "active concert or participation" with defendants in violating the Order.[3]

■■■ Such a showing requires proof that Columbia either has abetted defendants in violating the Order or is legally identified with them.[4] On the affidavits before the Court, however, the most that can be said is that Columbia and the defendants entered into their licensing agreement after the instant lawsuit had commenced and plaintiffs had filed their motion for preliminary injunctive relief but more than eight months before the injunction was issued. There is no allegation by Columbia or anyone else that defendants have violated the injunction, much less that Columbia has colluded with them in doing so. Unless the

---

**1.** *O & L Associates v. Del Conte*, No. 83 Civ. 7939, Preliminary Injunction Order, (S.D.N.Y. Dec. 3, 1984) (emphasis added).

**2.** *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945).

**3.** *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir.1979); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir.1930).

**4.** *Vuitton et Fils*, 592 F.2d at 130; *Backo v. Local 281, United Bro. of Carpenters & Joiners*, 438 F.2d 176, 180–81 (2d Cir.1970), *cert. denied*, 404 U.S. 858 (1971); *Alemite Mfgr.*, 42 F.2d at 833.

defendants were involved in a violation of the Order, Columbia cannot be held in contempt as an abettor.[5] Nor is there any evidence that the licensing agreement is anything but an arm's length transaction involving totally distinct entities. Columbia did not become legally identified with defendants simply by obtaining a license to use a service mark allegedly belonging to them.[6] Moreover, while Columbia allegedly obtained a "universal right, in perpetuity," to use the name "The Flirts," that alleged right is limited to use in connection with the distribution and exploitation of "The Karate Kid." Since there is no evidence that Columbia acquired defendants' business enterprise, Columbia may not be regarded as the defendants' successor in interest to property in litigation such that a decree issued in connection therewith is binding upon it.[7]

The only arguably relevant fact issue that Columbia and the parties to this action have raised on this motion is whether Columbia had notice of the pending lawsuit and motion for preliminary injunctive relief when it entered into the licensing agreement with defendants. Columbia, in a sworn affidavit on personal knowledge, denies having had such notice, and the affidavit is uncontroverted by anyone having personal knowledge of the matter. Yet even if Columbia had known that an injunction had already been *issued,* it would not necessarily have become bound thereby. By itself, notice of an injunction does not bind a nonparty recipient; there must also be proof that the nonparty was in "active concert or participation" with defendants within the meaning of Rule 65(d). Broad language in a decree is no substitute for such proof.[8] In the absence of any evidence that Columbia was in "concert or participation" with defendants, Columbia, as well as anyone else, has failed to raise an issue whether it is bound by the Court's Order. Consequently, there is no need to consider Columbia's application that the Order be vacated with respect to the distribution and exploitation of "The Karate Kid."

The question remains whether the language of the Order should be made to conform to that of Rule 65(d). While an injunction is not invalid simply because its terms purport to broaden its scope beyond that defined in the Rules,[9] there is no justification for using such terms when, as it appears in this case, the only effect they are likely to have is to threaten those who are not subject to the command of the Court.[10] Accordingly, the first full paragraph on page two of the Order dated December 3, 1984 is modified by deleting the phrase "or acting under authority or license granted by any of them." Also, defendants' application to increase the amount of plaintiffs' bond is denied. Any injury they may sustain if Columbia were held to be bound by the Order is speculative in view of the foregoing.

So ordered.

**5.** *See Herrlein v. Kanakis,* 526 F.2d 252, 254 (7th Cir.1975); *Heyman v. Kline,* 444 F.2d 65, 66–67 (2d Cir.1971); *United Pharmacal Corp. v. United States,* 306 F.2d 515, 517–18 (1st Cir.1962); *Alemite Mfg.,* 42 F.2d at 833.

**6.** *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 108–12, 89 S.Ct. 1562, 1568–70, 23 L.Ed.2d 129 (1969); *Heyman,* 444 F.2d 66–67; *Petersen v. Fee Int'l, Ltd.,* 435 F.Supp. 938, 943–44 (W.D.Okla.1975).

**7.** *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 177–80, 94 S.Ct. 414, 421–23, 38 L.Ed.2d 388 (1973); *Regal Knitwear,* 324 U.S. at 14–15, 65 S.Ct. at 481; *Computer Searching Serv. Corp. v. Ryan,* 439 F.2d 6, 9 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 62, 30 L.Ed.2d 115 (1971).

**8.** *Regal Knitwear,* 324 U.S. at 14–16, 65 S.Ct. at 481–482; *Chase Nat'l Bank v. City of Norwalk,* 291 U.S. 431, 436–37, 54 S.Ct. 475, 477, 78 L.Ed. 894 (1934); *Vuitton et Fils,* 592 F.2d at 129; *Alimente Mfg.,* 42 F.2d at 832–33.

**9.** *Regal Knitwear,* 324 U.S. at 15–16, 65 S.Ct. at 481–482.

**10.** *See id.* at 16–17, 65 S.Ct. at 482 (Stone, C.J., dissenting).